TRUJILLO & TRUJILLO, APLC
Robert Trujillo, Esq. (CA SBN 148975)
Melody Trujillo, Esq. (CA SBN 165218)
41593 Winchester Road, Suite 201
Temecula, CA 92590
Tel:  951-296-9529
Email:  trulaw@trujillo-law.us

Suzanne Skolnick, Esq. (CA SBN 211076)
2888 Loker Avenue East, Suite 110-F
Carlsbad, CA  92010
Tel: 760-405-4397
Email:  suzanne@skolnicklawgroup.com

Robert P. Karwin, Esq.
The Law Office of Robert P. Karwin
29800 Bradley Rd., #103
Menifee, CA 92586
Tel: 951-246-4514
Email:  rkarwin@karwinlaw.com

Attorneys for Plaintiffs Alicia Sepulveda, et al.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Alicia Sepulveda, individually and as Successor-in-Interest to the Estate of Pedro Sepulveda (Deceased); Rafael Sepulveda, individually and as Successor-in-Interest to the Estate of Pedro Sepulveda; Angelina Alcaraz, Veronica Sepulveda; Juan J. Sepulveda; Rafael Sepulveda, Jr.; Maria Dolores Sepulveda; Jesus Sepulveda; Blanca Sepulveda, ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **Case No. 5:18-cv-00230** <br><br> **PLAINTIFFS' COMPLAINT FOR DAMAGES AND VIOLATIONS OF CIVIL RIGHTS** <br><br> **JURY TRIAL DEMANDED** |
| Plaintiffs, ) | |

1

v.
COUNTY OF RIVERSIDE;
STANLEY SNIFF, Sheriff of Riverside
County; JERRY GUTIERREZ,
Corrections Assistant Sheriff; DAVID
KONDRIT, Captain; SERGEANT
MAGANA, Correctional Sergeant;
KEVIN CAVERLEY, Deputy;
Corporal A. BELTON, Correctional
Corporal; D. CLOYD, Deputy;
ROBERT LACRUE, Deputy;
STEVEN SANTOS, Nurse; MIKE
ZWADNEY, Nurse; DAMIEN
MIRANDA; and DOES 1-100,
                    Defendants.

## **PRELIMINARY STATEMENT**

1.     On January 22, 2017, Plaintiffs' decedent, Pedro Sepulveda, age 27, died as a direct and proximate result of acts and/or omissions of County of Riverside employees when Deputies and medical staff of the Riverside County Sheriff's Department, at the Larry D. Smith Correctional Facility ("LSCF"), failed to treat obvious signs of oxygen deprivation and/or failed to follow basic emergency medical services, protocols and guidelines.

## **JURISDICTION**

2.     This is a civil rights wrongful death/survival action relating to the death of Decedent Pedro Sepulveda, which arises under Title 42 of the United States Code, Sections 1983 and 1988, and the First and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by Title

**PLAINTIFFS' COMPLAINT FOR DAMAGES, VIOLATIONS OF CIVIL RIGHTS
CASE NO.: 5:18-CV-00230**

28 of the United States Code, Sections 1331 and 1343. Plaintiffs further invoke the supplemental jurisdiction of this Court pursuant to Title 28 of the United States Code, Section 1367, to hear and decide claims arising under state law. The amount in controversy herein, excluding interest and costs, exceeds the minimum jurisdictional limit of this Court.

## VENUE

3.     The unlawful acts and practices alleged herein occurred in the County of Riverside, State of California, within this judicial district.  Therefore, venue lies in the United States District Court for the Central District of California.

## CLAIMS REQUIREMENT

4.     Plaintiffs have complied with the requirements of California Government Code section 900, et seq., where an action for state court claims is filed against a public entity and its employees.

## SUCCESSOR-IN-INTEREST AFFIDAVIT FILED

5.     An appropriate affidavit in compliance with California Code of Civil Procedure §377.32 supporting ALICIA SEPULVEDA's right to bring a survival action on behalf of the Estate of Pedro Sepulveda is concurrently filed with this pleading and incorporated herein by reference.

6.     An appropriate affidavit in compliance with California Code of Civil Procedure §377.32 supporting RAFAEL SEPULVEDA's right to bring a survival

3

action on behalf of the Estate of Pedro Sepulveda is concurrently filed with this pleading and incorporated herein by reference.

7.    Alicia Sepulveda and Rafael Sepulveda in their capacities as Successor-in-Interest to the Estate of Pedro Sepulveda are both the parents of Pedro Sepulveda and are therefore co-successors-in-interest to the Estate of Pedro Sepulveda.

## PARTIES

8.    At all relevant times, Pedro Sepulveda ("Decedent") was an individual residing in the County of Riverside, State of California.

9.    Plaintiff, Alicia Sepulveda, individually and as Successor-in-Interest to the Estate of Pedro Sepulveda, is, and at all times mentioned herein was, a resident of the State of California.  Alicia Sepulveda is the mother of Decedent and brings this action both in her own right based on the loss of her son pursuant to Code of Civil Procedure section 377.60, and in her representative capacity as successor-in-interest to the Decedent's estate.

10.    Plaintiff, Rafael Sepulveda, individually and as Successor-in-Interest to the Estate of Pedro Sepulveda, is, and at all times mentioned herein was, a resident of the State of California.  Rafael Sepulveda is the father of Decedent and brings this action both in his own right based on the loss of his son pursuant to Code of Civil Procedure section 377.60, and in his representative capacity as

4

**PLAINTIFFS' COMPLAINT FOR DAMAGES, VIOLATIONS OF CIVIL RIGHTS
CASE NO.: 5:18-CV-00230**

successor-in-interest to the Decedent's estate.

11.     Plaintiff, Angelina Alcaraz is the sibling of Decedent and is, and at all times mentioned herein was, a resident of the State of California.  Angelina Alcaraz brings this action in her individual capacity based on the loss of her brother.

12.     Plaintiff, Veronica Sepulveda is the sibling of Decedent and is, and at all times mentioned herein was, a resident of the State of California.  Veronica Sepulveda brings this action in her individual capacity based on the loss of her brother.

13.     Plaintiff, Juan Sepulveda is the sibling of Decedent and is, and at all times mentioned herein was, a resident of the State of North Carolina.  Juan Sepulveda brings this action in his individual capacity based on the loss of his brother.

14.     Plaintiff, Rafael Sepulveda, Jr., is the sibling of Decedent and is, and at all times mentioned herein was, a resident of the State of California.  Rafael Sepulveda, Jr. brings this action in his individual capacity based on the loss of his brother.

15.     Plaintiff, Maria Sepulveda is the sibling of Decedent and is, and at all times mentioned herein was, a resident of the State of California.  Maria Sepulveda brings this action in her individual capacity based on the loss of her

5

brother.

16.     Plaintiff, Jesus Sepulveda is the sibling of Decedent and is, and at all times mentioned herein was, a resident of the State of California.  Jesus Sepulveda brings this action in his individual capacity based on the loss of his brother.

17.     Plaintiff, Blanca Sepulveda is the sibling of Decedent and is, and at all times mentioned herein was, a resident of the State of California.  Blanca Sepulveda brings this action in her individual capacity based on the loss of her brother.

18.     Defendant County of Riverside (hereinafter "County") is a public entity which is responsible for and administers the Larry D. Smith Correctional Facility (hereinafter "LSCF") through its agency, the Riverside County Sheriff's Department (hereinafter "RCSD").  County promulgates policies and practices for the housing, custody, care, safekeeping and protection of inmates in the LSCF.  At all times relevant, County was responsible for ensuring that the actions, policies, procedures, practices and customs of the Riverside County Sheriff's Department and its employees and agents complied with the laws of the Constitution of the United States and of the State of California.

19.     Defendant Stanley Sniff (hereafter "Sniff") is, and at all times herein mentioned was, the Sheriff of Riverside County.  As Sheriff of Riverside County, Sniff has ultimate supervision and management responsibility over the five jails,

6

or correctional facilities in Riverside County, all managed by the Sheriff's Department Corrections Division.  Sheriff Sniff ran, operated, oversaw, administered, supervised and was otherwise responsible for the conduct of the Riverside County Sheriff's Department at LSCF, including the conduct of emergency medical response teams at the jail. Sniff at all times possessed the power and the authority and was charged by law with the responsibility to enact policies and to prescribe rules and practices concerning the operation of the Riverside County Sheriff's Department and/or was the supervisor of the other defendant officers named herein.  Sniff is sued in his personal/individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, or for his acquiescence in the constitutional deprivations alleged herein.

20.     Defendant Jerry Gutierrez (hereafter "Gutierrez") is, and at all times herein mentioned was, the Corrections Assistant Sheriff of Riverside County. Gutierrez ran, operated, oversaw, administered, supervised and was otherwise responsible for the conduct of the RCSD at LSCF.

21.     Defendant David Kondrit (hereafter "Kondrit") is, and at all times herein mentioned was, Captain at LSCF and ran, operated, oversaw, administered, supervised and was otherwise responsible for the conduct of the RCSD at LSCF. Kondrit was also responsible for the protection, care and custody of the inmates at

7

**PLAINTIFFS' COMPLAINT FOR DAMAGES, VIOLATIONS OF CIVIL RIGHTS**
**CASE NO.: 5:18-CV-00230**

LSCF and for carrying out the policies and procedures of LSCF and the Riverside County Sheriff's Department.

22.    Defendant Sergeant Magana (hereafter "Magana") is, and at all times herein mentioned, was a Correctional Sergeant for the Riverside County Sheriff's Department and was charged with supervising Deputies at LSCF,  responsible for the protection, care and custody of the inmates at LSCF and for carrying out the policies and procedures of LSCF and the Riverside County Sheriff's Department. Magana was present at the time of the incident and involved with failing to provide prompt, adequate medical care to Pedro Sepulveda at the jail.

23.    Defendant Kevin Caverley (hereafter "Caverley") is, and at all times herein mentioned, was a Deputy working Housing Unit 1 of LSCF at the time of the incident and was an employee of the Riverside County Sheriff's Department. Deputy Caverley was responsible for the protection, care and custody of the inmates at LSCF and was present at the time of the incident and involved with failing to provide prompt, adequate medical care to Pedro Sepulveda at the jail.

24.    Defendant Corporal A. Belton (hereafter "Belton") is, and at all times herein mentioned, was a Deputy working Housing Unit 1 of LSCF at the time of the incident and was an employee of the Riverside County Sheriff's Department. Corporal A. Belton was responsible for the protection, care and custody of the inmates at LSCF and was present at the time of the incident and involved with

8

failing to provide prompt, adequate medical care to Pedro Sepulveda at the jail.

25.    Defendant Deputy D. Cloyd (hereafter "Cloyd") is, and at all times herein mentioned, was a Deputy working Housing Unit 1 of LSCF at the time of the incident and was an employee of the Riverside County Sheriff's Department. Deputy Cloyd was responsible for the protection, care and custody of the inmates at LSCF and was present at the time of the incident and involved with failing to provide prompt, adequate medical care to Pedro Sepulveda at the jail.

26.    Defendant Robert LaCrue (hereafter "LaCrue") is, and at all times herein mentioned, was a Deputy working Housing Unit 1 of LSCF at the time of the incident and was an employee of the Riverside County Sheriff's Department. Deputy LaCrue was responsible for the protection, care and custody of the inmates at LSCF and was present at the time of the incident and involved with failing to provide prompt, adequate medical care to Pedro Sepulveda at the jail.

27.    Defendant Nurse Steven Santos (hereafter "Santos") is, and at all times herein mentioned, was a nurse working Housing Unit 1 of LSCF at the time of the incident and was an employee of the Riverside County Sheriff's Department.  Nurse Santos was responsible for providing medical care and treatment to inmates at LSCF and witnessed and directly participated in the failure to provide prompt, adequate medical care to Pedro Sepulveda at the jail.

28.    Defendant Nurse Mike Zwadney (hereafter "Zwadney") is, and at all

9

**PLAINTIFFS' COMPLAINT FOR DAMAGES, VIOLATIONS OF CIVIL RIGHTS**
**CASE NO.: 5:18-CV-00230**

times herein mentioned, was a nurse working Housing Unit 1 of LSCF at the time of the incident and was an employee of the Riverside County Sheriff's Department.  Nurse Zwadney was responsible for providing medical care and treatment to inmates at LSCF and witnessed and directly participated in the failure to provide prompt, adequate medical care to Pedro Sepulveda at the jail.

29.    Defendant Damien Miranda (hereafter "Miranda") is, and at all times herein mentioned, was a resident of the State of California and an inmate at LSCF.

30.    Does 1-100 are Deputies, employees or agents of the County of Riverside.

31.    Plaintiff is ignorant of the true names and capacities of Defendant Does 1 – 100, inclusive, and therefore sue these defendants by such fictitious names.  Plaintiffs are informed and believe, and based thereon allege, that each defendant so named is responsible in some manner for the injuries and damages suffered by Plaintiffs.  Plaintiffs will amend this complaint to state the true names and capacities of defendants Does 1 – 100, inclusive, when they have been ascertained.

32.    At all times mentioned herein, each named Doe Defendant was the agent or employee of Defendant County of Riverside and, in doing the things alleged, was acting within the course and scope of such agency or employment and with the actual or implied permission, consent, authorization and approval of

10

the County.

## STATEMENT OF FACTS

33.     Plaintiffs reallege and incorporate by reference paragraphs 1-32 of this complaint as though fully set forth herein.

34.     On January 21, 2017 Decedent Pedro Sepulveda was housed at Larry D. Smith Correctional Facility ("LSCF") in Housing Unit 1 when he was involved in an altercation with another prisoner by the name of Damien Miranda.

35.     Prior to the time of the incident, Damien Miranda was known by County of Riverside jail employees to be a violent, confrontational inmate who had been involved in at least four (4) assault and battery incidents with other inmates between February 4, 2016 and December 3, 2016, before the altercation with Decedent.  Plaintiffs are informed and believe, and based thereon allege, that at all times Defendants County of Riverside, Magana, Caverley, Belton, Cloyd, LaCrue, and Does 1 to 100 knew that Damien Miranda was dangerous, should not be permitted to interact with other inmates, and failed to adequately separate Damien Miranda from Pedro Sepulveda such that a fight between the two inmates occurred on January 21, 2017, wherein Damien Miranda inflicted bodily injury on Decedent.  At all times, Defendants Magana, Caverley, Belton, Cloyd, LaCrue, and Does 1 to 100 knew that Damien Miranda was threatening Pedro Sepulveda and that a substantial risk of serious harm to the health and safety of Pedro

PLAINTIFFS' COMPLAINT FOR DAMAGES, VIOLATIONS OF CIVIL RIGHTS
CASE NO.: 5:18-CV-00230

Sepulveda existed by failing to protect Pedro Sepulveda from the threats, intimidation and violence subjected to him by Damien Miranda.

36. Following an exchange of punches with Defendant Miranda on January 21, 2017, Decedent fell to the floor and appeared to be in medical distress.

37. While Decedent was lying on the floor, he was attended to by another inmate. That same inmate had to send other inmates to get help for Pedro Sepulveda, since no jail or medical staff were responding. Decedent was lying on the floor of Housing Unit 1 for several minutes before any County of Riverside jail employees first entered the room.

38. Once County of Riverside employees entered the room, they walked to where Decedent was lying, with no sense of urgency. One of the jail employees appeared to kick Decedent's arm as he approached him. Then, a group of jail employees stood around Decedent for several more minutes without summoning medical help or commencing emergency medical procedures, including, checking and clearing Decedent's airway, or providing oxygen or other life-saving first aid treatment, despite knowing that Decedent was in medical distress and had labored breathing.

39. Eventually, a jail employee entered the room with what appeared to be oxygen on a cart. However, when the employee opened up various bags

12

**PLAINTIFFS' COMPLAINT FOR DAMAGES, VIOLATIONS OF CIVIL RIGHTS**
**CASE NO.: 5:18-CV-00230**

attached to the cart to administer oxygen to Decedent, he promptly closed the bags and then moved the cart away from Decedent without ever having provided any oxygen or medical aid to Decedent.  Plaintiffs are informed and believe, and based thereon allege, that the oxygen cart did not contain all of the necessary equipment to administer oxygen to a patient in need, including, Decedent at the time of the incident.  Plaintiffs are informed and believe and based thereon allege that Jail employees failed to properly inspect, test for functionality and maintain the equipment necessary to provide life-saving treatment to Decedent.

40.     Many minutes after the time Decedent fell to the floor, he was roughly dragged onto a mattress or sheet by jail employees and dragged out of the view of cameras into a courtyard. Decedent was moved roughly by way of one employee dragging him by one arm onto a mattress or sheet and then sliding his body across the floor and out into the courtyard area without any spinal or airway obstruction precautions whatsoever. While jail employees stood around Decedent failing to provide life-saving care to him, there was no sworn Deputy supervision. Jail employees failed to secure the area around Decedent in order to provide first aid.  Jail Deputies also failed to provide appropriate spinal or airway obstruction precautions and medical assessment before moving Decedent to the outside courtyard area.

41.     Once out in the courtyard, Plaintiffs are informed and believe, and

13

**PLAINTIFFS' COMPLAINT FOR DAMAGES, VIOLATIONS OF CIVIL RIGHTS**
**CASE NO.: 5:18-CV-00230**

based thereon allege, that Decedent medically crashed several times, without a single jail employee coming to his aid, rendering CPR or oxygen.  While Decedent was out in the courtyard, nurses arrived who could have performed CPR or provided oxygen to Decedent but failed to do so.

42.     Plaintiffs are informed and believe, and based thereon allege, that the following jail employees were present and involved with the inadequate medical care administered to Decedent at the scene of the incident:  Correctional Sergeant Magana, Deputy Kevin Caverley, Senior Correctional Corporal A. Belton, Deputy D. Cloyd, Deputy Robert LaCrue, and Does 1 to 100.

43.     Plaintiffs are informed and believe, and based thereon allege, that the following jail employees were present and involved with the inadequate medical care administered to Decedent once Decedent's body was dragged out to the courtyard:  Nurse Steven Santos, Detention Health Services Nurse Mike Zwadney as well as Correctional Sergeant Magana, DeputyDeputy Kevin Caverley, Senior Correctional Corporal A. Belton, DeputyDeputy D. Cloyd, and DeputyDeputy Robert LaCrue and Does 1 to 100.

44.     Pursuant to jail records, a "man down" call went out at 11:45 a.m., yet Cal Fire records indicate that they didn't receive a call for help until 11:54a.m., and didn't make contact with Decedent until 12:04 p.m, which was (according to jail records) three minutes after Decedent went into full arrest.

14

**PLAINTIFFS' COMPLAINT FOR DAMAGES, VIOLATIONS OF CIVIL RIGHTS**

**CASE NO.: 5:18-CV-00230**

45.     Decedent's family was not notified by the Riverside Sheriff's Department that Decedent was in medical distress until almost 12 hours after the incident at 11:22 p.m. when Detective Bishop made contact with Decedent's parents at their home. Plaintiffs are informed that another inmate contacted Plaintiffs' neighbor several hours earlier in the evening to inform Plaintiffs that Decedent was injured and in medical distress.

46.     Decedent was already declared brain dead as a result of oxygen deprivation by the time jail employees finally made contact with Decedent's family at their home at 11:22 p.m. on January 21, 2017.  Decedent's parents were not permitted to see Decedent at the hospital until such time as they agreed to allow the harvesting of Decedent's organs – which was a decision Decedent's parents made reluctantly under duress.

47.     Decedent was pronounced dead by staff at Loma Linda University Medical Center on January 22, 2017, which was the last hospital he was transferred to before his death.  Decedent was only 27 years old at the time of his death.

48.     Plaintiffs allege that County of Riverside employees, including: Defendants Magana, Caverley, Belton, Cloyd, LaCrue, and Does 1 to 100, failed to make timely inspections of the dayroom such that the beating of Decedent could have been prevented, or Deputies could have intervened such that Decedent

15

would not have died.

49.     Plaintiffs allege that Defendants Magana, Caverley, Belton, Cloyd, LaCrue, and Does 1 to 100, were either not present or were not paying attention and failed to properly monitor Housing Unit 1, including, failing to make visual inspections of Housing Unit 1 according to the jail's standard operating procedures, which caused or contributed to the incident occurring.

50.     Plaintiffs allege that Defendants Magana, Caverley, Belton, Cloyd, LaCrue and Does 1 to 100, knew or had reason to know that Decedent was in need of immediate medical care and they failed to take reasonable action to summon such medical care.

51.     Plaintiffs allege that Defendants Santos, Zwadney and Does 1 to 100 knew or had reason to know that Decedent was in need of immediate medical care and they failed to take reasonable action to summon such medical care or provide such medical care to Decedent, despite the fact that it was their duty to do so.

52.     As a direct and proximate result of the acts and/or omissions of Defendants Magana, Caverley, Belton, Cloyd, LaCrue, Santos, Zwadney and Does 1 to 100, Decedent Pedro Sepulveda died.

<u>Allegations Relating to Custom, Pattern and/or Practices</u>

53.     Plaintiffs allege that County of Riverside's acts and omissions amounted to a custom, practice or policy of violating the Constitutional rights of

16

inmates housed in County of Riverside jails, including those housed at LSCF in that the County of Riverside:

a.  Caused and permitted LSCF to be overcrowded, which contributed to inmate-on-inmate violence;

b.  Required violent and/or mentally unstable inmates to be housed together and to interact with one another without appropriate supervision;

c.  Failed to assign sufficient Sheriff's Deputies to LSCF in order to provide adequate monitoring and supervision of the inmates;

d.  Failed to properly train the Sheriff's Deputies which resulted in Deputies not having sufficient knowledge or skills to adequately monitor and supervise the inmates;

e.  Acquiesced in its employees' failure to properly use the video surveillance systems that were available to Deputies for supervising the dayrooms;

f.  Acquiesced in its employees' failure to follow standard operating procedures regarding performing physical visual inspections of the dayrooms;

g.  Acquiesced in its employees' failure to provide constitutionally adequate medical care to inmates in need of medical attention; and

h.  Acquiesced in its employees' failure to take reasonable action to summon medical care when inmates are in need of immediate medical care.

54.  In doing the acts complained of herein, the Constitutional rights of

17

Decedent and Plaintiffs were violated, including, but not limited to:

a.  The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution; and

b.  The right to be free from cruel and unusual punishment and from prejudgment punishments as guaranteed by the Eighth Amendment to the United States Constitution and in the case of a pre-trial detainee like Pedro Sepulveda, under the Fourteenth Amendment to the U.S. Constitution.

**First Claim**
**Violation of 42 U.S.C. §1983**
**Deliberate Indifference to Serious Medical Needs**
**By Plaintiffs Against Defendants Magana, Caverley, Belton, Cloyd, LaCrue, Santos, Zwadney, and Does 1-100**

55.     Plaintiffs reallege and incorporate by reference paragraphs 1-54 of this complaint as though fully set forth herein.

56.     On January 21, 2017, Pedro Sepulveda had a serious medical need in that he had been injured in a fight with a known, violent inmate and was lying on the floor of Housing Unit 1 of LSCF requiring medical attention, specifically, he was having difficulty breathing.

57.     Pedro Sepulveda, as a pre-trial detainee had a Fourteenth Amendment right to medical care.

58.     Defendants Magana, Caverley, Belton, Cloyd, LaCrue, Santos,

18

Zwadney, and Does 1-100 violated Pedro Sepulveda's constitutional right to medical care when they acted with deliberate indifference to Pedro Sepulveda's serious medical needs by failing to provide and summon for prompt and adequate medical attention to him when he was lying on the floor of Housing Unit 1.

59. At all times, Defendants Magana, Caverley, Belton, Cloyd, LaCrue, Santos, Zwadney, and Does 1-100 were acting under color of law and were acting in the course and scope of their employment with County of Riverside.

60. At all times, Defendants Magana, Caverley, Belton, Cloyd, LaCrue, Santos, Zwadney, and Does 1-100 knew that Pedro Sepulveda had a serious medical need.

61. At all times, Defendants Magana, Caverley, Belton, Cloyd, LaCrue, Santos, Zwadney, and Does 1-100 failed to provide appropriate assessment and evaluation of Pedro Sepulveda's injuries; failed to follow basic, universally accepted emergency medical protocols; failed to follow Riverside County Sheriff standard emergency medical procedures and policies; failed to provide adequate observation and medical intervention for Pedro Sepulveda's serious medical needs; seriously aggravated Pedro Sepulveda's medical condition by failing to provide oxygen and other life-saving care while waiting for EMTs to transport Mr. Sepulveda to hospital; delayed and denied Pedro Sepulveda appropriate care and treatment; failed to ensure appropriate medical treatment for Pedro Sepulveda

19

and moved Pedro Sepulveda's body by dragging him by one arm without adequate spinal or airway obstruction precautions.

62.     At all times, Defendants Magana, Caverley, Belton, Cloyd, LaCrue, Santos, Zwadney, and Does 1-100 knew or should have known that by failing to provide oxygen to Pedro Sepulveda, he would suffer severe injuries, including, brain damage and death.  When said Defendants arrived on scene to provide care to Pedro Sepulveda they brought with them an oxygen cart that lacked all of the equipment necessary to be utilized, thereby starving Mr. Sepulveda's brain and organs of oxygen.  Said Defendants knew or should have known that the cart lacked the equipment necessary to provide aid to Pedro Sepulveda and that without oxygen, Pedro Sepulveda would suffer serious injury, including death.

63.     On information and belief, Defendants Magana, Caverley, Belton, Cloyd, LaCrue, Santos, Zwadney, and Does 1-100 then unreasonably delayed in summoning an ambulance for Pedro Sepulveda, wasting precious time and thereby causing Mr. Sepulveda's death.

64.     As a direct and proximate result of Defendants Magana, Caverley, Belton, Cloyd, LaCrue, Santos, Zwadney, and Does 1-100's acts and omissions that were deliberately indifferent to Pedro Sepulveda's serious medical needs, Pedro Sepulveda died.

65.     The conduct alleged herein caused Pedro Sepulveda to be deprived of

20

his civil rights that are protected under the United States Constitution which has also legally, proximately, foreseeably, and actually caused Plaintiffs to suffer emotional distress, pain and suffering and further damages according to proof at trial.

66.     Plaintiffs seek both survival and wrongful death damages for the violation of Pedro Sepulveda's rights.

67.     The conduct alleged herein was done in deliberate or reckless disregard of Pedro Sepulveda's constitutionally protected rights, justifying an award of exemplary damages against Defendants Magana, Caverley, Belton, Cloyd, LaCrue, Santos, Zwadney, and Does 1-100 in an amount according to proof at the time of trial in order to deter Defendants from engaging in similar conduct and to make an example by way of monetary punishment.  Plaintiffs are also entitled to attorney fees and costs of suit herein.

**Second Claim**
**(Wrongful Death – Cruel and Unusual Punishment)**
**42 U.S.C. § 1983**
**By Plaintiffs Against Defendants Magana, Caverley, Belton, Cloyd, LaCrue, Santos, Zwadney, and Does 1-100**

68.     Plaintiffs reallege and incorporate by reference paragraphs 1-67 of this complaint as though fully set forth herein.

69.     Defendants Magana, Caverley, Belton, Cloyd, LaCrue, Santos, Zwadney, and Does 1-100 committed wrongful acts under color of law which

21

proximately caused the death of Pedro Sepulveda.  In doing the acts/omissions complained of, Defendants Magana, Caverley, Belton, Cloyd, LaCrue, Santos, Zwadney, and Does 1-100 acted under the color of state law to deprive Pedro Sepulveda of certain constitutionally protected rights including, but not limited to, the right not to be deprived of life or liberty without due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution, the right to be free from violence at the hands of another inmate and the right to be free from cruel and unusual punishment under the due process clause of the Fourteenth Amendment to the U.S. Constitution.

70.     Defendants Magana, Caverley, Belton, Cloyd, LaCrue, Santos, Zwadney, and Does 1-100 saw Pedro Sepulveda in medical distress but failed to render aid including administering CPR or providing oxygen to him when it was known by them that he was having difficulty breathing and required prompt medical care.  Defendants Magana, Caverley, Belton, Cloyd, LaCrue, Santos, Zwadney, and Does 1-100 knew or should have known that by denying oxygen and delaying the administration of oxygen to Pedro Sepulveda, his brain and organs would sustain severe damage, and that Pedro Sepulveda could and would die from a lack of oxygen.

71.     Defendants Magana, Caverley, Belton, Cloyd, LaCrue, Santos, Zwadney, and Does 1-100 knew that Pedro Sepulveda was dying due to a lack of

22

oxygen but failed to render aid or promptly transfer him to the hospital.

72. Defendants Magana, Caverley, Belton, Cloyd, LaCrue, Santos, Zwadney, and Does 1-100 deprived Pedro Sepulveda of his rights under the U.S. Constitution and Defendants' wrongful acts were done with deliberate indifference to the safety and welfare of Pedro Sepulveda.

73. The conduct alleged herein violated Pedro Sepulveda's rights alleged above thereby resulting in a deprivation of Plaintiffs' rights, which have legally, proximately, foreseeably and actually caused Plaintiffs to suffer emotional distress, pain and suffering, and further general and special damages according to proof at the time of trial.

74. Plaintiffs seek both survival and wrongful death damages for the violation of Pedro Sepulveda's rights.

75. The conduct alleged herein was done in deliberate or reckless disregard of Pedro Sepulveda's constitutionally protected rights, justifying an award of exemplary damages against Defendants Magana, Caverley, Belton, Cloyd, LaCrue, Santos, Zwadney, and Does 1-100 in an amount according to proof at the time of trial in order to deter Defendants from engaging in similar conduct and to make an example by way of monetary punishment. Plaintiffs are also entitled to attorney fees and costs of suit herein.

**Third Claim**
**Right of Association**
**By Alicia Sepulveda and Rafael Sepulveda against Defendants Magana, Caverley, Belton, Cloyd, LaCrue, Santos, Zwadney, and Does 1-100**

76.     Plaintiffs reallege and incorporate by reference paragraphs 1-75 of this complaint as though fully set forth herein.

77.     Defendants Magana, Caverley, Belton, Cloyd, LaCrue, Santos, Zwadney, and Does 1-100 deprived Pedro Sepulveda of his rights under the United States Constitution to be free from cruel and unusual punishment, denial of medical care and denial of due process.

78.     The aforementioned acts and/or omissions of Defendants Magana, Caverley, Belton, Cloyd, LaCrue, Santos, Zwadney, and Does 1-100 in being deliberately indifferent to Pedro Sepulveda's serious medical needs, health and safety; and violating Pedro Sepulveda's civil rights to be free from cruel and unusual punishment, deprived Plaintiffs Alicia Sepulveda and Rafael Sepulveda of their liberty interest in the parent-child relationship in violation of their substantive due process rights as defined by the First and Fourteenth Amendments to the U.S. Constitution.

79.     There was no legitimate penological interest in denying and delaying access to medical care to an inmate in obvious medical distress and leaving him unattended and without oxygen.  Defendants Magana, Caverley, Belton, Cloyd, LaCrue, Santos, Zwadney, and Does 1-100 actions shock the conscience.

**PLAINTIFFS' COMPLAINT FOR DAMAGES, VIOLATIONS OF CIVIL RIGHTS**
**CASE NO.: 5:18-CV-00230**

80.     The deprivation of the rights alleged above has destroyed the Constitutional rights of Pedro Sepulveda's parents, Alicia Sepulveda and Rafael Sepulveda, to the society and companionship of their son which is protected by the substantive due process clause of the Fourteenth Amendment.

81.     The conduct alleged herein violated Pedro Sepulveda's rights alleged above thereby resulting in a deprivation of Plaintiffs' rights alleged above, which has legally, proximately, foreseeably and actually caused Plaintiffs to suffer emotional distress, pain and suffering and further damages according to proof at the time of trial.

82.     Plaintiffs Alicia Sepulveda and Rafael Sepulveda bring this claim both individually and as successors-in-interest to Pedro Sepulveda and seek both survival and wrongful death damages for the violation of Pedro Sepulveda's rights and their own rights.

83.     The conduct alleged herein was done in deliberate or reckless disregard of Pedro Sepulveda's constitutionally protected rights, justifying an award of exemplary damages against Defendants Magana, Caverley, Belton, Cloyd, LaCrue, Santos, Zwadney, and Does 1-100 in an amount according to proof at the time of trial in order to deter Defendants from engaging in similar conduct and to make an example by way of monetary punishment.  Plaintiffs are also entitled to attorney fees and costs of suit herein.

25

**Fourth Claim**
**Violation of 42 U.S.C. §1983**
**Failure to Properly Train**
**By Plaintiffs against County of Riverside, Sniff, Gutierrez, Kondrit, Magana, Belton, and Does 1 to 100**

84.     Plaintiffs reallege and incorporate by reference paragraphs 1-83 of this complaint as though fully set forth herein.

85.     County of Riverside, Sniff, Gutierrez, Kondrit, Magana, Belton, and Does 1 to 100, acting under color of law, have subjected Pedro Sepulveda and other persons similarly situated to a pattern of conduct consisting of continuing, widespread and unconstitutional misconduct.

86.     County of Riverside, Sniff, Gutierrez, Kondrit, Magana, Belton, and Does 1 to 100, have failed to maintain adequate and proper training necessary to educate Deputies and medical staff as to the Constitutional rights of inmates; to prevent the consistent and systematic failure to provide medical care; and to train their Deputies properly on emergency, welfare or cell checks. Longstanding and systemic deficiencies in the Riverside County jail system, included:  Deputies failing to conduct thorough cell checks at regularly-timed intervals in order to adequately supervise inmates to watch for signs of violence erupting between inmates; inadequate medical staffing, lack of required training or screening, diagnosis and treatment of medical and psychiatric conditions, and non-compliant medical policies and procedures.

26

87.     County of Riverside, Sniff, Gutierrez, Kondrit, Magana, Belton, and Does 1 to 100, have failed to promulgate corrective policies and regulations in the face of repeated constitutional violations, such that there has been an official "policy of acquiescence" in the wrongful conduct on the part of Defendants County of Riverside, Sniff, Gutierrez, Kondrit, Magana, Belton, and Does 1 to 100.

88.     County of Riverside, Sniff, Gutierrez, Kondrit, Magana, Belton, and Does 1 to 100, have also failed to train and supervise staff to ensure that medical and oxygen carts at the jails are properly equipped with all of the necessary equipment in order to be utilized in medical emergencies.

89.     Prior to the incident, County of Riverside, Sniff, Gutierrez, Kondrit, Magana, Belton, and Does 1 to 100, knew with certainty that a functioning and properly equipped oxygen supply is an essential tool to protect health, safety, and well-being of inmates in their care. The absence of essential equipment for supplying oxygen, which was brought to the scene of decedent's struggle for air, as described herein, could only have been the result of the failure of defendants to property train jail and medical staff on the preparation and maintenance of medical supplies and the application of emergency aid to inmates in distress. The need for this equipment and response training is so obvious that the failure to provide for it can be characterized as deliberate indifference to the constitutional

27

rights of Plaintiffs' decedent.  County of Riverside, Sniff, Gutierrez, Kondrit, Magana, Belton, and Does 1 to 100 knew that having inadequately equipped medical and oxygen carts in the jails would expose inmates to serious health and safety risks because the life-saving emergency equipment would then be unavailable and/or inoperable to assist Deputies and medical staff in providing CPR and other emergency care and treatment to inmates.

90.    Despite having such knowledge, County of Riverside, Sniff, Gutierrez, Kondrit, Magana, Belton, and Does 1 to 100 failed to train and supervise staff to ensure that all jail staff frequently checked the available equipment to confirm that it was operational and ready to be used at moment's notice and to repair or replace missing or non-operational equipment promptly.

91.    As a direct result of the failure in training and supervision of jail staff by County of Riverside, Sniff, Gutierrez, Kondrit, Magana, Belton, and Does 1 to 100, the oxygen cart that was brought to Pedro Sepulveda was non-operational and Pedro Sepulveda did not receive the life-saving oxygen he required resulting in his suffering and eventual death.

92.    County of Riverside, Sniff, Gutierrez, Kondrit, Magana, Belton, and Does 1 to 100, have acted with deliberate indifference in disregarding their duty to protect the public from official misconduct.  The failure to promulgate or maintain constitutionally adequate training was done with deliberate indifference to the

**PLAINTIFFS' COMPLAINT FOR DAMAGES, VIOLATIONS OF CIVIL RIGHTS CASE NO.: 5:18-CV-00230**

rights of Pedro Sepulveda and others in his position.

93.     Despite their knowledge of previous instances of inadequate and improper medical responses to serious medical needs of inmates housed in the Riverside County jail system, County of Riverside, Sniff, Gutierrez, Kondrit, Magana, Belton, and Does 1 to 100, failed to properly train or retrain their Deputies and medical staff to prevent serious harm to inmates and acquiesced in, and ratified, insufficient medical training of the Deputies, knowing that such inadequate training put the health and safety of inmates at LSCF in jeopardy.

94.     The foregoing alleged lack of adequate training was done with deliberate indifference and caused Pedro Sepulveda harm at the hands of County of Riverside employees when Pedro Sepulveda required prompt medical attention, including the administration of oxygen on January 21, 2017.

95.     Despite their knowledge of previous instances of wrongful deaths in the jails, County of Riverside, Sniff, Gutierrez, Kondrit, Magana, Belton, and Does 1 to 100 failed to properly train or retrain their Deputies and medical staff to prevent deaths of inmates.

96.     The lack of adequate training was the moving force behind the harm caused to Pedro Sepulveda.  As a result of County of Riverside, Sniff, Gutierrez, Kondrit, Magana, Belton, and Does 1 to 100's historical failure to properly train, County of Riverside, Sniff, Gutierrez, Kondrit, Magana, Belton, and Does 1 to

29

100 were deliberately indifferent to the needs of Decedent.

97.     As a direct and proximate result of the actions of County of

Riverside, Sniff, Gutierrez, Kondrit, Magana, Belton, and Does 1 to 100, Pedro

Sepulveda suffered unconstitutional treatment and inhumane conditions while in

LSCF that resulted in his death.

**Fifth Claim**
**Violation of 42 U.S.C. §1983**
**Failure to Supervise & Discipline**
**By Plaintiffs against County of Riverside, Sniff, Gutierrez, Kondrit, Magana,**
**Belton, and Does 1 to 100**

98.     Plaintiffs reallege and incorporate by reference paragraphs 1-97 of

this complaint as though fully set forth herein.

99.     County of Riverside, Sniff, Gutierrez, Kondrit, Magana, Belton, and

Does 1 to 100:

(a) Failed to provide adequate supervision over the medical staff and

Deputies who are required to render emergency medical care that meets the

standards of the Constitution;

(b) Failed to promulgate and enforce adequate policies and procedures

related to rendering adequate emergency medical care that meets

professional and legal standards such that the violation of citizens' civil

rights by Deputies and medical staff occurred and is continuing to occur in

the Riverside County jail system.

30

100.   County of Riverside, Sniff, Gutierrez, Kondrit, Magana, Belton, and Does 1 to 100, have a widespread history of ratifying Deputy misconduct by failing to conduct appropriate investigations.

101.   County of Riverside, Sniff, Gutierrez, Kondrit, Magana, Belton, and Does 1 to 100 were aware of previous instances of untimely, inadequate and improper medical care and treatment provided to inmates and failed to properly supervise and discipline their employees or agents to abate such conduct.

102.   Upon information and belief, Sniff, Gutierrez, Kondrit, Magana, Belton, and Does 1 to 100 were made aware of the foregoing misconduct or witnessed the Constitutional violations committed by Deputies and medical staff but failed to supervise or discipline them.  There has been an official "policy of acquiescence in the wrongful conduct".

103.   County of Riverside, Sniff, Gutierrez, Kondrit, Magana, Belton, and Does 1 to 100, have failed to promulgate corrective policies and regulations in the face of repeated Constitutional violations.  The foregoing Defendants condoned and acquiesced in the abusive behavior of their subordinates by refusing to retrain them, discipline them, or correct their abusive behavior.

104.   As a result of their failure to properly supervise Deputies and medical staff of the Riverside County Sheriff's office, County of Riverside, Sniff, Gutierrez, Kondrit, Magana, Belton, and Does 1 to 100, were deliberately

**PLAINTIFFS' COMPLAINT FOR DAMAGES, VIOLATIONS OF CIVIL RIGHTS
CASE NO.: 5:18-CV-00230**

indifferent to the needs of Pedro Sepulveda.

105.   The failure to supervise was the moving force behind the misconduct of the Deputies, the denial of medical care to Pedro Sepulveda and Pedro Sepulveda's resulting pain, suffering and loss of life.

106.   As a result of the foregoing failure to supervise and discipline employees for the unconstitutional conduct, Pedro Sepulveda's Fourteenth Amendment rights were violated.

107.   As a direct and proximate result of the actions of County of Riverside, Sniff, Gutierrez, Kondrit, Magana, Belton, and Does 1 to 100, Pedro Sepulveda suffered unconstitutional treatment and inhumane conditions while in LSCF as well as significant physical injuries and death. The failure to supervise and discipline was the moving force behind the misconduct of the Deputies and medical staff arriving on scene to Pedro Sepulveda on January 21, 2017 and was the moving force behind the delay and denial of medical care to Pedro Sepulveda, thereby resulting in his death.

**Sixth Claim**
**Violation of 42 U.S.C. §1983**
**Monell Municipal Liability**
**By Plaintiffs against County of Riverside**

108.   Plaintiffs reallege and incorporate by reference paragraphs 1-107 of this complaint as though fully set forth herein.

109.   Defendant County of Riverside maintained an unconstitutional

32

policy, ordinance or regulation which allowed their Deputies and medical staff to delay and deny medical care to inmates.

110.   There were longstanding and systemic deficiencies in the Riverside County jail system, including LSCF's treatment of inmates.  Deficiencies included improper cell checks, inadequate medical staffing, lack of required training or screening, diagnosis and treatment of medical and psychiatric conditions, and non-compliant medical policies and procedures.

111.   County of Riverside's failure to adequately train its Deputies regarding treatment of inmates in emergency medical situations and/or medical distress rises to the level of a municipal custom that authorized and/or condoned Deputy and medical staff misconduct.  Upon information and belief, the permanent, widespread, well-settled practice or custom was to delay or deny treatment to inmates in serious medical distress; not properly screen inmates for medical care or treatment; failing to utilize universally accepted emergency medical protocols and procedures; failing to communicate the medical needs of inmates to other staff, including outside medical facilities; not properly checking on the welfare of the inmate; failing to conduct proper cell checks as required; failing to maintain fully functional medical equipment and oxygen carts; and not investigating misconduct of Deputies and medical staff.

112.   County of Riverside was deliberately indifferent to the widespread

unconstitutional acts by its Deputies and medical staff and failed to set forth appropriate policies regarding the treatment of inmates.  During the relevant period, all individually named Defendants herein, medical staff and presently unascertained employees of the County of Riverside Does 1 to 100, were acting pursuant to the policy of County of Riverside.  This pattern of deliberate indifference to basic medical needs of inmates within the County of Riverside jail system promoted and maintained a culture of deliberate indifference to human life and basic medical care and treatment for inmates at LSCF.

113.   County of Riverside was deliberately indifferent to the right of Pedro Sepulveda and others to be free from, and protected from, harm caused by the misconduct of its employees.  The County of Riverside's longstanding practice or custom was unconstitutional in that it was deliberately indifferent to a substantial risk of serious harm to inmates and violated inmates', including Pedro Sepulveda's, Fourteenth Amendment right to receive medical care, to be free from cruel and unusual punishment and due process.

114.   As a direct and proximate result of the practice or custom of the County of Riverside and the individual Defendants named herein, as well as presently unascertained employees of the County of Riverside Does 1 to 100, Pedro Sepulveda was denied appropriate medical care when he lay injured on the floor of Housing Unit 1 requiring prompt, medical attention and instead he was

34

not administered oxygen and his medical assessment and treatment was unnecessarily and wrongfully delayed by County employees.

115.   The unlawful and illegal conduct of County of Riverside and the individually named Defendants alleged herein, deprived Pedro Sepulveda of his constitutionally protected rights, including, but not limited to, his rights to due process under the 14th Amendment to the U.S. Constitution.

116.   As a direct, proximate and foreseeable result, Pedro Sepulveda died and Plaintiffs incurred damages for the wrongful death of Pedro Sepulveda in an amount according to proof at the time of trial.

**Seventh Claim**
**Violation of 42 U.S.C. §1983**
**Failure to Protect & Cruel and Unusual Punishment – Fourteenth Amendment**
**By Plaintiffs against Magana, Caverley, Belton, Cloyd, LaCrue and Does 1 to 100**

117.   Plaintiffs reallege and incorporate by reference paragraphs 1-116 of this complaint as though fully set forth herein.

118.   Pedro Sepulveda was incarcerated at LSCF under conditions that posed a substantial risk of serious harm to his health and safety, which were known to Defendants Magana, Caverley, Belton, Cloyd, LaCrue and Does 1 to 100.  Such conditions included:

(a)  Placing Pedro Sepulveda in a dayroom where Damien Miranda could interact with him.  Damien Miranda was a known, violent inmate who had

35

**PLAINTIFFS' COMPLAINT FOR DAMAGES, VIOLATIONS OF CIVIL RIGHTS**
**CASE NO.: 5:18-CV-00230**

inflicted violence upon other inmates at least four prior times before the date that he attacked Pedro Sepulveda;

(b)  Failing to assign sufficient Sheriff's Deputies to Housing Unit 1 at LSCF in order to provide adequate monitoring and supervision of the inmates;

(c)  Causing and permitting the LSCF to be overcrowded, which contributed to causing inmate on inmate violence;

(d)  Failing to properly train the Sheriff's Deputies assigned to the LSCF so that the Deputies did not have sufficient knowledge or skills to adequately monitor and supervise the inmates;

(e)  Failing to follow standard operating procedures regarding performing physical visual inspections of the dayrooms at LSCF;

(f)  Placing Pedro Sepulveda in the dayroom with other inmates under circumstances which were conducive to the eruption of violence; and

(g)  Failing to timely intervene to stop the attack by Damien Miranda against Pedro Sepulveda.

119.   Defendants Magana, Caverley, Belton, Cloyd, LaCrue and Does 1 to 100 had ample and reasonably sufficient time and opportunity to intervene and prevent Pedro Sepulveda's injuries and ultimate death, and were compelled to do so as employees of the Sheriff's department, under the laws of the State of

California and under the Constitution of the United States of America.

120.   In deliberate indifference to the life and welfare of Pedro Sepulveda, Defendants Magana, Caverley, Belton, Cloyd, LaCrue and Does 1 to 100 intentionally and with deliberate indifference to the civil rights of Pedro Sepulveda, refrained from intervening in the acts leading to Pedro Sepulveda's injuries and ultimate death.

121.   Defendants Magana, Caverley, Belton, Cloyd, LaCrue and Does 1 to 100 acted under the color of state law to deprive Pedro Sepulveda of certain constitutionally protected rights including, but not limited to, the right not to be deprived of life or liberty without due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution and the right to be free from cruel and unusual punishment.

122.   The above acts and omissions, while carried out under color of law, have no justification or excuse in law, and instead constitute a gross abuse of governmental authority and power, shock the conscience, are fundamentally unfair, arbitrary and oppressive and unrelated to any activity which governmental officers may appropriately and legally undertake in the course of protecting persons or property or ensuring civil order.

123.   In acting or failing to act as hereinabove alleged, Defendants Magana, Caverley, Belton, Cloyd, LaCrue and Does 1 to 100, were deliberately

37

indifferent to the substantial risk that Damien Miranda would assault and severely

injure Pedro Sepulveda.

124.   As a proximate result of the aforementioned wrongful conduct, Pedro

Sepulveda suffered injuries and ultimately, death.

125.   The conduct of Defendants Magana, Caverley, Belton, Cloyd,

LaCrue and Does 1 to 100, was intentional, malicious, willful, wanton and in

reckless disregard of Pedro Sepulveda's constitutional rights and/or grossly

negligent in that this conduct shocks the conscience and is fundamentally

offensive to a civilized society, so as to justify the imposition of punitive damages

against each of the foregoing individual defendants.

### Eighth Claim
### Negligence (Wrongful Death Damages & Survival Damages)
**By Plaintiffs against County of Riverside, Sniff, Gutierrez, Kondrit, Magana, Caverley, Belton, Cloyd, LaCrue, Santos, Zwadney, and Does 1 to 100**

126.   Plaintiffs reallege and incorporate by reference paragraphs 1-125 of

this complaint as though fully set forth herein.

127.   Defendant County of Riverside is subject to liability pursuant to Cal.

Govt. Code section 815.2(a) which provides that a public entity is liable for injury

proximately caused by an act or omission of an employee of the public entity

within the scope of his employment if the act or omission would, apart from this

section, have given rise to a cause of action against that employee or his personal

representative.

**PLAINTIFFS' COMPLAINT FOR DAMAGES, VIOLATIONS OF CIVIL RIGHTS**
**CASE NO.: 5:18-CV-00230**

128.   The following defendants are employees of Defendant County of Riverside: Sniff, Gutierrez, Kondrit, Magana, Caverley, Belton, Cloyd, LaCrue, Santos, Zwadney, and Does 1 to 100.  They are subject to liability pursuant to Government Code section 820(a), which provides that a public employee is liable for injury caused by his act or omission to the same extent as a private person.

129.   At all times mentioned herein, Sniff, Gutierrez, Kondrit, Magana, Caverley, Belton, Cloyd, LaCrue, Santos, Zwadney, and Does 1 to 100 were acting in the course and scope of their employment with County of Riverside.

130.   County of Riverside, Sniff, Gutierrez, Kondrit, Magana, Caverley, Belton, Cloyd, LaCrue, Santos, Zwadney, and Does 1 to 100 owed a duty to Pedro Sepulveda to act with ordinary care and prudence so as not to cause him harm or injury.

131.   County of Riverside, Sniff, Gutierrez, Kondrit, Magana, Caverley, Belton, Cloyd, LaCrue, Santos, Zwadney, and Does 1 to 100 also owed Pedro Sepulveda a duty to monitor and supervise inmates, including Damien Miranda in order to avoid instances of violence perpetrated by other inmates against Pedro Sepulveda.

132.   The supervisory defendants Sniff, Gutierrez, Kondrit, Magana, Belton and Does 1 to 100 owed Pedro Sepulveda a duty to properly train and supervise jail staff and medical staff in responding to emergency situations, and

39

ensuring that appropriate emergency medical procedures were being followed and that oxygen carts and other life-saving medical equipment were being properly checked, repaired and replaced to ensure the equipment was operational at all times.

133.   At all times mentioned herein, Defendants Santos, Zwadney were acting in the course and scope of their employment with Defendant County of Riverside and were nurses with training in handling medical emergencies and providing care to injured victims.

134.     Defendants Santos and Zwadney owed Plaintiff a duty of care to provide community standard of care medical treatment to Pedro Sepulveda and not to do anything to worsen his medical condition.  Under Government Code section 845.6, a public employee lawfully engaged in the practice of the healing arts is not exonerated from liability for injury proximately caused by malpractice. Government Code section 845.6 also provides that a public entity is not exonerated from its obligation to pay any judgment, compromise, or settlement that it is required to pay under section 844.6(d).  Government Code section 844.6(d) provides that a public entity shall pay any judgment based on a claim against a public employee who is lawfully engaged in the practice of the healing arts for malpractice arising from an act or omission in the scope of his employment.

40

135.     The foregoing duties of care owed to Pedro Sepulveda were breached based on the following acts/omissions:

(a)  negligently and carelessly failing to provide universally accepted emergency medical evaluations, including, but not limited to:  checking vitals, triage, and first responder first aid and CPR as well as universally accepted spinal precautions, airway obstruction precautions or medical precautions;

(b)  improperly, negligently, wrongfully and recklessly delaying, denying, and failing to provide adequate medical care to Pedro Sepulveda when it was apparent that he had suffered serious injuries and required immediate (hospital level) medical attention;

(c) failing to take reasonable action to summon medical treatment for Pedro Sepulveda;

(d)  improperly, negligently, wrongfully and recklessly failing to follow proper procedures for inmates showing signs of serious medical need;

(e)  failing to supervise and train staff in dealing with emergency medical situations involving inmates;

(f)  failing to supervise and train staff regarding monitoring the interaction of inmates in the dayroom to ensure the protection of inmates from violence at the hands of other inmates, including, instructing staff on the segregation of known violent inmates from other inmates in order to reduce or eliminate inmate-on-

41

inmate violence within the Riverside County jail system;

(g)  failing to supervise and train staff in overseeing that emergency medical equipment is routinely inspected, remedied and repaired so that it is fully operational at all times for the health and safety of inmates;

(h)  Improperly, negligently, wrongfully and recklessly failing to set forth policies regarding medical treatment of inmates, medical screening of inmates, evaluation of inmate injuries, treatment of inmate injuries and transportation of inmates with serious medical needs; and

(i)  Failing to exercise due care in monitoring and supervising Damien Miranda and Pedro Sepulveda.

136.   As a direct and proximate result of County of Riverside, Sniff, Gutierrez, Kondrit, Magana, Caverley, Belton, Cloyd, LaCrue, Santos, Zwadney, and Does 1 to 100's acts and omissions, Pedro Sepulveda was injured when he was in a fight with inmate Damien Miranda and subsequently died from inadequate and delayed medical care, thereby causing Plaintiffs' injuries and damages in an amount to be proven at trial.

137.   As a direct and proximate result of County of Riverside, Sniff, Gutierrez, Kondrit, Magana, Caverley, Belton, Cloyd, LaCrue, Santos, Zwadney, and Does 1 to 100's negligent conduct alleged herein, Pedro Sepulveda suffered severe physical harm, emotional distress and ultimately, death.

138.   The wrongful acts alleged above have destroyed the relationship between Plaintiffs and Pedro Sepulveda and have legally, proximately, foreseeably and actually caused severe emotional damages, including the loss of love, society, companionship, comfort, care, assistance, protection, affection, and moral support, emotional distress, funeral and burial expenses and further economic and non-economic damages according to proof at the time of trial.

139.   Based on the foregoing, Plaintiffs Alicia Sepulveda and Rafael Sepulveda as the Successors-in-Interest to Pedro Sepulveda's Estate also seek survival damages pursuant to Code of Civ. Proc. § 377.30 and § 377.34 based on the economic losses incurred by Pedro Sepulveda between the time of his injury and the time of his death.

140.   The conduct of the individually named Defendants amounts to oppression, fraud or malice within the meaning of Civil Code section 3294 et seq., and punitive damages should be assessed against each such defendant for the purpose of punishment and for the sake of example.

### Ninth Claim
### Battery
### By Plaintiffs Against Defendant Damien Miranda

141.   Plaintiff realleges and incorporates by reference paragraphs 1 - 140 of this complaint.

142.   On January 21, 2017, Defendant Damien Miranda touched Pedro

43

Sepulveda with the intent to harm or offend him by punching him in Housing Unit 1 at LSCF.

143.   Defendant Miranda inflicted bodily injury on Pedro Sepulveda which caused him harm and ultimately led to his death.

144.   At no time did Pedro Sepulveda consent to the touching by Miranda.

145.   A reasonable person in Pedro Sepulveda's situation would have been offended by Defendant Miranda's conduct in hitting Pedro Sepulveda.

146.   As a direct and proximate result of Defendant Miranda's actions in hitting Pedro Sepulveda, Pedro Sepulveda was harmed and suffered damages and injuries as alleged herein.

147.   Defendant Miranda's conduct alleged herein amounts to oppression, fraud or malice within the meaning of Civil Code section 3294 et seq., and punitive damages should be assessed against Miranda for the purpose of punishment and for the sake of example.

## **PRAYER**

1.     WHEREFORE, Plaintiffs pray for the following relief:

a. For compensatory and general damages in the amount of $6,000,000.00, or in whatever other amount may be proven at trial, including both survival damages and wrongful death damages under federal and state law;

44

b. For funeral and burial expenses and loss of financial support;

c. For punitive damages against the individual defendants in an amount to be proven at trial;

d. Reasonable costs of suit and attorneys' fees pursuant to 42 U.S.C. §1988 where appropriate;

e. Prejudgment interest;

f. Such other relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiffs respectfully demand that the present matter be set for a jury trial.

Dated:  January 31, 2018 \s_____
Robert Trujillo, Esq.
Attorney for Plaintiffs,

Dated:  January 31, 2018 \s_____
Melody Trujillo, Esq.
Attorney for Plaintiffs,

Dated:  January 31, 2018 \s_____
Suzanne Skolnick, Esq.
Attorney for Plaintiffs,

Dated:  January 31, 2018 \s_____
Robert Karwin, Esq.
Attorney for Plaintiffs,